CROSBY MILLING COMPANY
*vs.*
SUNRISE EGGS, INC.

Washington.   June 15, 1965.

*Irving Isaacson, Esq.*, for the Plaintiff.

*Herbert T. Silsby* and *William S. Silsby, Esqs.*, for the Defendant.

SITTING:  WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, MARDEN, RUDMAN, JJ.

WEBBER, J.   The defendant prosecutes this appeal from the decree of a single justice below.   On the basis of supportive evidence the justice found that one Newman entered into a contract with the defendant for the sale of eggs to be produced by an identified flock owned by Newman.   Newman gave the plaintiff a written assignment of the net proceeds of this contract, the plaintiff being engaged in supplying feed for Newman's poultry.   Newman was an officer of defendant corporation and the latter had knowledge of the assignment from its inception.   Under the arrangement among the parties the defendant was justly entitled to pay to Newman 5¢ per dozen, to a prior assignee

2¢ per dozen, and to retain for trucking 2½¢ per dozen. The balance of the purchase price, however, was payable to the plaintiff but the defendant admits that it ignored the assignment and made payments to the plaintiff only as instructed from time to time by Newman. The amount thus paid to the plaintiff is short by $17,955.56 and judgment for the plaintiff in this amount was ordered.

Whatever may have been the law with respect to partial assignments prior to 1945 need not concern us here. In that year the legislature enacted a statute captioned "Assignment of Accounts" which became R. S. 1954, Ch. 113, Sec. 171 (P. L. 1945, Ch. 100). This statute remained in force and governed the transactions here in controversy but was later repealed by P. L. 1963, Ch. 362, Sec. 26. This repeal was enacted in connection with the adoption of the Uniform Commercial Code and by the terms of P. L. 1963, Ch. 362, Sec. 43 was made effective December 31, 1964. The statute while it remained in force provided as follows:

> "Every written assignment made in good faith, whether in the nature of a sale, pledge or other transfer, of an account receivable or of an amount due or to become due on an open account or on a contract, all hereinafter called 'account', with or without the giving of notice of such assignment to the debtor shall be valid, legal and complete at the time of the making of such assignment and shall be deemed to have been fully perfected at that time. Thereafter no bona fide purchaser from the assignor, no creditor of any kind of the assignor and no other assignee or transferee of the assignor in any event shall have or be deemed to have acquired any right in the account so transferred or in the proceeds thereof or in any obligation substituted therefor which in any way shall affect the rights therein of the original assignee. In any case where, acting without knowledge of such assignment, the debtor in good faith pays or otherwise satisfies all or part of such account

> to the assignor, or to such creditor, subsequent purchaser or other assignee or transferee, such payment or satisfaction shall be acquittance to the debtor to the extent thereof, and such assignor, creditor, subsequent purchaser or other assignee or transferee shall be a trustee of any sums so paid and shall be accountable and liable to the original assignee therefor."

After contrasting the rules which obtained at law and in equity prior to 1945 with respect to partial assignments, the justice below concluded his findings with the following language:

> "However, I am also convinced that with the adoption in Maine of the provisions of Ch. 113, Sec. 171 of the Revised Statutes, *all* assignments, both full and partial, became enforceable under the provisions of that statute."

We concur with his interpretation of the statute and its controlling applicability in the instant case.

*Appeal denied.*